We'll turn to our next argument today, Blake v. Wallace, 22-3163. Good morning, Your Honors, and may it please the Court. My name is Selby Brown, and along with my law partner, Hathaway Burden, I represent Plaintiff Appellant Shidon Blake. I plan to reserve three minutes for rebuttal. We'll see how that goes. This is a case about access to the courts. In 2020, Mr. Blake was an inmate at the Kansas Department of Corrections in a state facility. He submitted a complaint that he was forcibly medicated with fentanyl and morphine and sent to a hospital after refusing medical treatment, and even though he was not displaying symptoms. Well, he was showing symptoms. He was showing slurred speech, high anxiety, previous stroke, previous heart problems. That's sort of other things that it was not just saying I'm perfectly fit. Respectfully, Your Honor, his complaint specifically says I was not demonstrating stroke symptoms. Well, he said that, but the facts are that he had a stroke, that he was slurring his words. There were several different things that would tip somebody off, and if he had dropped dead in the floor because they didn't take him, you'd be standing there saying that they should have taken him to the hospital. I do recognize the tension between the general case that is a deliberate indifference medical case and this case, and that it is an inmate actually saying I wanted to refuse medical treatment. The procedural posture here is very important. We are at a pre-screening stage. The district court said I'm dismissing this for failure to state a claim, and the facts that Your Honor is referencing are from the Martinez report. And it is very well established in this circuit that you cannot use a Martinez report to contradict the allegations in the plaintiff's complaint. And I'd like to take you as my first point, and this really is the most important part of this entire appeal, is that his allegations are that he was not demonstrating stroke symptoms. Understanding that the defendants dispute that in the Martinez report, they haven't actually made merits arguments in this case until they got before this court. And the Martinez report does include allegations and statements, unsworn statements from officers saying that they had observed slurred speech. But if you take a look, first let's start just with the complaint. So the complaint is a handwritten form, and of course it could have been clearer. There's plenty of law explaining why we hold pro se plaintiffs to a lower standard. There's the Haynes Supreme Court standard. And when you look at the complaint itself, and that's really mostly on the record at page 12, there's one big page where he really explains his version of events. So first he says, they said I looked like I was experiencing a stroke, but I was being recorded and spoke clearly, not demonstrating any symptoms of a stroke. Let me stop with two things. Of course. One, he does allege that the people at the prison, at the jail, thought he was having a stroke. That's correct, right? I think reading his allegations fairly, he's not suggesting they thought he had a stroke. The times that he says things that come close to that, the syntax is kind of weird, and he is unambiguous that he was not displaying symptoms. If you're not displaying symptoms, there's nothing to observe. So the idea that the people thought he was having symptoms, if you accept his allegations that I was not demonstrating any symptoms of a stroke, which he repeats, and I've got some references we can go over. I see you have another question. I see your point on that. I'm not sure I agree with it. But he references the video in his complaint. We have cases saying that makes the video part of the complaint. Yes, Your Honor. Even if it's used in a Martinez report, it's still part of the record that we can consider on a motion to dismiss. How do you address that point? I think the video supports his position. He's saying he was not demonstrating stroke symptoms. You see him at the very beginning of the video. They're shackling him. He's speaking clearly. He's anxious, and he explains his anxiousness in the record that he was afraid of prison officials. There's a page, in fact, in the Martinez report that shows how many disciplinary incidents he had in this prison, especially when compared to his long stint in prison. It's a long list, particularly at this facility. And he was anxious. But he's not slurring his speech. His face isn't drooping. There's no symptomology that we see. Do you agree that we can consider that video? Because he references the video in his complaint, I would agree that you can consider it. But I also do not. The one place that defendants latch on to is this, that he offered that he was, you know, someone asked when did the symptoms start, and he starts to offer it. But he gets cut off, and he doesn't fully explain what he was seeing. It's also the fact that the defendants say in the video that they thought he was having a stroke. Even though you can consider the video, I don't think that it's proper for the district court to make a credibility determination at this stage that what the officers were saying in that video reflected their true observations and true beliefs. But if we read the complaint, it's not alleging that they were misrepresenting their thinking. You've got to challenge the fact before the judge can consider it. If the judge and we read the complaint as saying that the officers thought he was having a stroke, then we would need some evidence. He would need to challenge that, and he hasn't done that. Yeah, I didn't think he challenged the background facts. Especially, I think he does. So starting just with the complaint, and then I can go to other places in the record where I think it's a little clearer. But just in the complaint, first and foremost, I'm not demonstrating symptoms of a stroke. If you're not demonstrating symptoms, there's nothing to observe. So the rest of it falls apart there, and he's very explicit. I mean, there's not really room for interpretation of I'm not demonstrating symptoms of a stroke. All right, well, hold on. But if we can consider the video because it's part of the complaint, and none of us, I won't speak for my colleagues, but I'm not a physician with a lot of expertise in stroke symptomology, but not even talking about the credibility of those who are observing him. But what if I watch the video, and I do see trembling, and I do see him unable to get off essentially the bed where he is to sit in the wheelchair? And also, I have no baseline for his behavior because I've never seen Mr. Blake prior to that video, so I don't know what his normal sort of mental state is. He seems very agitated. So why can't I watch the video and say, well, I'm not sure that's a well-pleaded fact that he says I have no symptoms? Because even as a layperson, I feel like I'm observing symptoms. I think there is one piece in the video where the EMT looks at this guy who's presenting all the things that you're describing. Yeah, but this is before the EMT gets there. This is while the CSOs are trying to put him into the wheelchair. And he explains that he's anxious because he's afraid in that moment. So any trembling, I think it's equally plausible that he's trembling. He has said, I want to refuse medical treatment. Who is requiring me to be restrained here? I'm being put in like there is a real inconsistency between being put in a restraint, which the department policies, which are part of the record, I think at 180, specifically say that a nurse after restraint is supposed to go check to see if circulation has been hindered. So there is a disconnect between saying, I think you're having a stroke, but I'm going to put you in a restraint chair. And you hear Mr. Blake say that to fellow inmates as they're wheeling him out. They think I'm having a stroke, but they're treating me like this. You already know this. He explains that this treatment is inconsistent with the way he had been treated before. And I do think it's compelling that when he is wheeled into the triage unit, like one of the first things that the EMT says is, I don't see any symptoms of a stroke. When he gets to the hospital, the doctor doesn't even run any tests. In triage, he alleges, not in the complaint, but in later record materials, that his blood pressure was normal. There were all these signs showing that there are a lot of inconsistencies with the way that the officers are behaving, the way they're departing from norms, not offering him a refusal. The EMT is not saying, oh, man, we've really got to get you to the hospital right this minute. And more to the point, it is not a case where it's, here's a diabetic, and we need to give them insulin. And there's an obvious connection even to a layperson. They say they give him fentanyl and morphine for pain, not for stroke symptoms. Counsel, excuse me. Before you run out of time, you're seeking injunctive relief. He is no longer in Kansas. He's in Maryland. Doesn't that move the injunctive relief without showing that he may be coming back to Kansas more than just speculation? In Washington v. Harper, they actually address a similar thing at the very beginning of the opinion. And because of the transfers, they said that the mootness was not – it was capable of repetition. Here, Mr. Blake has been transferred twice since we've been representing him in the last year. I don't think that it is outside the realm of possibility that he gets returned to Kansas. It's speculation, though, that he might be returned. He might go to Ohio, too. Right now he's in Illinois. So he's gone from Maryland to Kansas to Maryland to Kansas to Maryland to Illinois in his – over the course of his treatment. How would injunctive relief work? Sorry? How would injunctive relief work if he's in a different circuit, much less a different district? I'm not sure. What happens if we had a ruling and then there's an issue raised in the state where he's moved to, and a district court rules differently and a circuit court rules differently? It's pretty unwieldy to handle that. Well, I think the injunctive relief would be applied specifically to these defendants. There is another issue that he – it's equitable relief, at least. Because of events following this, he goes to the hospital, he gets a fake write-up that the officer admits was fake. It seems to be part of an overall course of events, and it has impeded his ability to get parole. And so I think part of it is literally clearing his record so that he can use that relief. There's another problem I see, that he's sued the officers in their official capacity. You don't sue them in their official capacity. Yes, Your Honor. And I think that's one of the grounds on which the court could remand for amendment. It is a pro se litigant, and even though he sues them in their official capacity. And he hasn't alleged individual involvement. It's all very general. And that's sufficient to dismiss for failure to state a claim. I mean, respectfully, this isn't a case where we're talking about a unit supervisor who wasn't present. Every one of these defendants was in the room. But they haven't named them specifically and said how they harmed this individual. Well, they – You can't just say everybody there did it. He does have a specific allegation on R-196 that Nurse Christian is who suggested that Mr. Blake should be medicated. He also has an allegation, and I think taking our arguments and the defendants together, they say Gorman observed him having symptoms. If you accept Mr. Blake's – Well, aside from that, you have no – he has not alleged specific harm from specific individuals. Well, the harm – He hasn't done it. He hasn't named them and what they did to him. Well, what they did to him was they – I know what they ultimately did. Well, they lied. But that's not sufficient. If they lied and they were – this is the Buck case. If they lied and they were the catalyst for an event that led to a violation of his constitutional rights, they lied about him having – You still have to name the individuals and state a claim against them, not in their official capacity. And have you proposed an amended complaint? I didn't see any indication that you had.  He has not submitted an amended complaint. This is a pre-screen – this is a screening dismissal, and he has not had the opportunity. There's substantial case law in this circuit that – You have represented him for a year. Did you seek to file an amended complaint in the district court? I've been representing him for a year in this court. We weren't in the – I was appointed by this circuit to represent him here. I'll reserve my remaining 40 seconds for rebuttal if I may. One factual question. I thought he had amended the complaint already once. No, he sought to amend the complaint. I believe it was after the district court had ordered the Martinez report and said, I'm not going to consider anything else. When he did, as a pro se litigant, he didn't understand the process. And it was before – I think later on we see there are more allegations that we can piece together, that this narrative that he has is that he wasn't experiencing symptoms, that he wasn't demonstrating symptoms, that officers were departing from a normal course of conduct. And as a result, we can infer that no one actually believed he was having a stroke. So we would ask for the case to be reversed and remanded. I see I'm out of time, so I'll –  Good morning, Your Honors. May it please the court. Assistant Solicitor General Ryan Ott on behalf of the correctional officers Wallace, Gorman, and Chastain. Before I get into my argument, I just want to clarify one fact that appellant said. My client – none of the defendants prepared the Martinez report. It was prepared by the Kansas Department of Corrections, who's not a party here. Additionally, there's good reason why. This is the first time the defendants have made any arguments on the merit. As the appellant noted, this was on screening, so it wasn't – we haven't filed an answer yet or a motion to dismiss, so we have had no opportunity in district court to address the merits. The district court ordered a Martinez report because it sought to clarify the issues as well as fill in the factual gaps of Mr. Blake's complaint. After reviewing – No, it can't fill in the gaps in such a way as to contradict the complaint. No. What I meant by filling the gaps is Mr. Blake made several allegations, but had a lot of – didn't allege a lot of actual facts. The district court used the Martinez report to fill in the facts. For instance, as Your Honors noted, the symptoms that were observed in – or discussed in the video, he states in his complaint that he did not – or that he did not suffer any stroke symptoms. It doesn't say he suffered no symptoms at all. When you watch the video, it's Gorman, I believe, and then the nurse do discuss symptoms with the EMT, but what defendants primarily rely on are words from Mr. Blake. It was Blake himself who indicated – showed his hand was shaking and told the EMTs that this happened this morning, that – he said, this shit happens all the time, I know how to deal with it. Blake was the one who told them that he was having chest pain. And while Gorman was the first one who told the EMTs that he was starting to speech, it was Blake who was – when they were trying to determine the timeframe that Blake offered, that it was – I think he was referencing a show or a program maybe, at what time it's usually on, and suggested it was around 6.50 in the morning. So these are all things that came from Blake himself, his words himself. These are things that were found in the video that are not contradictory of his complaint. His statement in his complaint that he was not suffering stroke symptoms is frankly an opinion. He's not a medical doctor anymore than I am or your honors are. It's his opinion that it wasn't stroke symptoms, but those are all symptoms that can easily be viewed as a stroke by somebody observing him. And given his past history, that was a reasonable determination to it. So, yeah. Well, when he got to the emergency room, they didn't think he had any stroke symptoms. Is that correct? That's what he alleged. I take that fact as true, so yes. What about the EMTs when they arrived? Did they observe any symptoms of a stroke? The EMTs did not. On the video, they do not say they observed symptoms of a stroke. They said he looked okay, but they also talked with the correctional officers as well as the nurse, but then they also talked directly with Blake. It was after talking with Blake and then finding out from some of the correctional officers there that they were going to have to wait a bit to get the proper restraints to take him to the hospital. The mailing EMT made a decision on his own that he was going to provide him with fentanyl for Blake's pain. Counsel, can I ask, in the context of trying to determine whether Mr. Blake has set forth well-pleaded facts in his complaint, we've been talking about the incorporation of the video into that complaint, and there are two things that I would ask for your help on in terms of observance from the video. The first is when they put him into the wheelchair to restrain him. There's a lot of agitation, and he wants to know who the captain is that ordered it, but what was the medical or penological interest in putting him in that chair and restraining him at that time? I do want to make clear that the excessive force claim for putting him in the wheelchair has been waived in his reply brief, but the reason was that he's being argumentative, combative. I don't remember which officer, but in one of the reports they state that he essentially said he would resist, he would fight. Another report stated, and these reports are in the Martinez report, stated that he tried to get off the table several times and they had to put him back on the table, and then if you watch the video after they put him in the chair, when it comes to putting on the arm and leg restraints, he resists, he tells them repeatedly he doesn't want that, he's got his handcuffs and his restraints on, that he thinks that's good enough, he didn't want to be restrained, and they had to essentially force his arm into position to finish the restraint. So the restraining into the wheelchair was for a penological interest only, not for medical interest? Yes, I would argue that it's for penological interest and it's due to his resistance to being transported to the EMTs. Okay, well let's turn to the second one, which is the administration of the fentanyl and the morphine. Now there's a separate issue about whether, you know, who's responsible for doing that, and obviously we see the EMTs do it, but what's the argument for the medical or penological interest in giving him those specific drugs under those circumstances? Well, as Your Honor noted, there's a debate on, or an issue for giving it to them, and that does make it a little hard to answer when it was the EMTs who made the ultimate decision to give him the pain medication, and they're not parties, and I can't speak to what their mental decision was. Well, the EMTs administered the medication, they're not parties. Right, that is correct, they're not parties, so I can't speculate into what their belief was, but I can say the medical interest, I mean, the EMT did state that he was doing it for the pain. Well, Mr. Blake, I suppose, appeared to be better that moment. It would be more apt to calm him down a little bit, wouldn't it? It could calm him down, yes, but... And the fentanyl is not the fentanyl that we see in the court all the time. It's a synthetic morphine. You don't do both morphine and fentanyl. Correct, it's not the fentanyl you usually see in criminal cases. Well, it could calm him down. Is there a narcotic that does that? The EMTs specified that they were doing it for the pain, not to calm him down, and in fact, I think if you watch the video, by the time he gets to the EMTs, he's not agitated with them. In fact, you can hear him talk to Nurse Christian, tell her he's not mad at her. So I don't think the evidence from watching the video shows that they were doing it to calm him down. They were doing it because he discussed having chest tightness. He talked about, or showed his handshaking. How do we know that? That he was complaining about chest tightness? Because... Is that the complaint? No, in the video, he tells the EMT that he had chest tightness. He didn't use the word pain? I believe he said pressure. He said he felt pressure in his chest. And on that point, I think I recall at some point in the briefing that his counsel argued that even though the EMTs administered the medication, it was the correction officers that essentially encouraged it. Do you think that's been preserved so that we could, if we're looking at what he's alleged to have complained about, they forcibly medicated him to even attach that at all to the corrections officers who are individually named? No, I don't think that's been preserved. And I don't think there's anything in the video that shows them talking to the EMTs about that. But when you're talking about, you mentioned preservation, I think it's important to note that two of the correctional officers, Gorman and Chastain, the district court found that he failed to allege their personal participation and dismissed his claims against them for failure to state a claim because of that. As I argued in my brief, Blake does not address that argument. It's been waived, but I think there's also, on the merits of the waiver, there's been a development since the correctional officers' briefs in that. In the reply brief, Blake waives his excessive force killing. And in the show cause order, the only time he mentions both Gorman and Chastain is to say they forced him into the restraining chair. So even if the court were to incline to disagree with the district court about whether a claim was actually stated against them, the only claim that could have been stated against them in their personal participation has now been waived by Blake, and so it's now a moot issue. When you say there's nothing on the video showing the officers telling the EMTs about plaintiff's condition, they had communications with the EMTs before to get them to come, did they not? Presumably, but we have no idea what was said there. I don't know what was said or if it was one of the correctional officers who did so or if it was Nurse Christian or another person who's not a party. Is there anything in the complaint that alleges what the officers told the EMTs? I don't believe there's any specifically what they said, but he does allege that. He alleges that collectively the defendants told the EMTs that he was suffering a stroke, and then I believe at one point in the complaint he specifies that Nurse Christian discussed it with them, but at no point did he say it was the correctional officers who, this is what they told him. You watch the video and it's Gorman who discussed it. He's the one who found him in a cell and told the EMTs what he observed, but that is the extent of any allegations of the correctional officer's communication. Counsel, can you address Judge Kelly's question to Ms. Brown about him now being in Maryland? And I think we just heard it represented that he now currently may be in Illinois, so he's being moved around to different states. Is he still serving a Kansas state sentence? He was never serving a Kansas state sentence. He was sentenced in Maryland. So why was he at El Dorado? From his past cases, when I was reviewing it, when he was incarcerated in Maryland, he approached the warden or some employees at the prison and essentially offered to mediate any disputes between correctional staff and inmates, and some members of, I believe he's part of a gang, thought he was offering to snitch. So Kansas agreed to take him for his protective purposes. Kansas agreed to take him, and that's why he's been in Kansas. But if we go on to Casper, for example, it will not show him as a Kansas inmate or that he has a Kansas sentence outstanding? No. In fact, when I took this case and I started researching, that was one of the first things I did, and I couldn't find him and it led to a lot of confusion on my part until I could figure it out, until I found a district of Kansas case stating that he was in Maryland, and that's how I was able to figure out he was no longer here. I do want to leave some time for my colleague, who's representing the nurse, to make sure that she can present her arguments. So if there's no further questions, I would ask this court to affirm. Thank you. May it please the court. Katrina Smelter, I represent the parties named as Centurion Health Services and Nurse Christian. Obviously, I don't have a lot of time, but I do want to hit a couple central points to those parties. First, Mr. Blake has actually waived his claims against Centurion Health Services, so we don't need to consider those claims. As to the claims against Nurse Christian, I do want to point out that some of the allegations against her were different and distinct from the allegations against correctional officers. First, there were no allegations against her that she had anything to do with the use of the restraint chair or any kind of force. Obviously, she made a medical recommendation and that led to that, but she was not physically involved with doing that or making the decision. Secondly, there were some allegations, especially in the briefing for this appeal from Mr. Blake, about allegations of retaliation and that that was a motive for Nurse Christian to make the decision she did. However, I do want to point out to this court that if we actually look at the allegations that Mr. Blake made, they are very sparse, they are very skeptical, or speculative. My apologies. He made allegations as to filing various grievances and lawsuits against correctional officers. There is no allegation that he filed any kind of a grievance or a lawsuit against Nurse Christian. So it is speculative to say that him filing grievances against correctional officers somehow led to her having a retaliation motive to decide the decisions that she did in the medical setting. I think the district court had the correct ruling here in finding that his complaint was too sparse, it was too speculative, it did not nudge things into the realm of plausibility, which we know is the standard he must do, especially as to Nurse Christian. So we ask this court that it affirm that decision. Thank you. If you have a correction, but 30 seconds is the most you'll get. You got it. Okay, just a couple very discrete points. One is Mr. Blake's response to the Martinez report does dispute that he tried to get off the table before being restrained, before the restraints were called for. And he also points to discrepancies in the defendant correctional officer's different articulations of what was happening. That, you know, Gorman says one thing, Wallace says another. The Martinez report does not have any medical records, but at R99 there is an internal email where Nurse Christian says that Mr. Blake was treated with fentanyl for pain. I think it's with fentanyl, may just be treated for pain. And the video does show the corrections officers explaining to the EMT, when the EMT says, I don't see you experiencing any stroke symptoms, and the corrections officers say, oh, no, no, he was doing that before, just before we got here. So those are my three points. And respectfully, Mr. Blake requests that reverse remand at minimum to allow him an opportunity to amend his complaint and make his articulation of the allegations more plain. Thank you. Thank you, counsel. Case is submitted. Counsel are excused.